*Absent objection and after thorough review, the Court adopts the report and recommendation of Chief Magistrate Judge Pollak, and directs the Clerk of Court to enter judgment accordingly.*

*So Ordered*

s/RJD

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
THOMAS A. CALLAHAN, JAMES T.
CALLAHAN, DENISE M. RICHARDSON
AND MICHAEL SALGO, in their capacity
as the BOARD OF TRUSTEES OF THE
ANNUITY FUND OF THE
INTERNATIONAL UINON OF
OPERATING ENGINEERS LOCAL 15,
15A, 15C & AND 15D, AFL-CIO,

      Plaintiffs,

-against-

VINCENT MASCARELLA,

      Defendant.
------------------------------------------------------------X

REPORT AND RECOMMENDATION
19 CV 1388 (RJD)

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ FEB 19 2020 ★
BROOKLYN OFFICE

POLLAK, United States Magistrate Judge:

On March 11, 2019, plaintiffs, Trustees of the Annuity Fund of the International Union of Operating Engineers Local 15, 15A, 15C & 15D, AFL-CIO ("plaintiffs" or "Local 15 Annuity Fund") commenced this action against Vincent Mascarella ("Mascarella" or "defendant"), to recover plan assets that were distributed to Mascarella based on his misrepresentations on his application for distribution under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001 et seq. (Compl.[1] ¶ 1).

---

[1] Citations to "Compl." refer to the Complaint filed on March 11, 2018.

1

Despite proper service on the defendant on March 27, 2019, defendant Mascarella failed to answer or otherwise respond to the Complaint. (Steinberg Aff.[2] ¶ 5; Ex. A[3]).[4] On August 21, 2019, the Clerk of Court entered a notation of default. (ECF # 12). Thereafter, plaintiffs filed a motion for default judgment, which was referred to the undersigned to determine liability and damages and to issue a Report and Recommendation. Defendant has failed to submit any paperwork to the Court in response to the motion for default judgment.

For the reasons set forth below, the Court respectfully recommends that plaintiffs' motion for default judgment be granted, and that damages be awarded in the amount of **$82,120.77**.

## FACTUAL BACKGROUND

Plaintiffs, the Trustees of the Local 15 Annuity Fund (the "Fund") are fiduciaries within the meaning of Section 3(21) of ERISA, 29 U.S.C. § 1002(21), maintaining an office at 44-40 11th Street, Long Island City, N.Y. (Compl. ¶¶ 4, 5). The Fund is a joint trustee fund established pursuant to Section 302 of the Labor Management Relations Act of 1947, 29 U.S.C. § 186, and is a defined contribution plan established for the purpose of providing retirement benefits to eligible participants. (Id. ¶¶ 5, 6).

According to the Complaint, defendant Mascarella resides at 28 Bay Point Drive, Toms River, N.J., and was at all relevant times a member of Local 15 and a participant in the Fund. (Id.

---

[2] Citations to "Steinberg Aff." refer to the Affidavit of James M. Steinberg, Esq. in Support of the Motion for a Default Judgment, dated August 19, 2019, ECF No. 15.

[3] Citations to "Ex. A" refer to Exhibit A of the Affidavit of James M. Steinberg, Esq. in Support of the Motion for a Default Judgment, ECF No. 15-1.

[4] According to the Steinberg Affidavit, personal service was effected by affixing a copy of the Summons and Complaint to the door of defendant's home, located at 28 Bay Point Drive, Toms River, New Jersey, and by mailing a copy of the same by First Class mail. (Steinberg Aff. ¶ 5; Ex. A).

2

¶¶ 8-10). Contributions remitted to the Fund were made on behalf of Mascarella by employers required to contribute as part of the terms of the collective bargaining agreements negotiated by Local 15. (Id. ¶ 9).

The Fund is administered by plaintiffs in accordance with the terms and conditions of a plan document that provides: "[A] Participant shall be eligible to receive 100% of his Individual Account balance. . . [I]f a Participant has not had any Employer Contributions credited to his account in a 12 consecutive month period, effective April 1, 1993." (Id. ¶ 12; Ex. B,[5] Art. IV, 3(a) through 3(d)). The governing plan document also requires that any application for payment of a benefit "must be made in writing in a form and manner prescribed by the Trustees." (Id. ¶ 13; Ex. B, Art. VIII, 2). Under the plan, any false statement "material to an application or the furnishing of fraudulent information or proof shall be sufficient reasons for the denial, suspension or discontinuance of benefits," and the Trustees have the right to recover benefits paid out in reliance on such false or fraudulent statements. (Id. ¶ 14; Ex. B, Art. VIII, 3).

According to the Complaint, on or about October 31, 2018, defendant Mascarella applied for distribution of 100% of his individual account balance, which at or around that time totaled $78,720.77. (Id. ¶¶ 11, 15). Plaintiffs allege that Mascarella completed a sworn affidavit in support of his application for the distribution of benefits, stating that "I understand and acknowledge that if I have worked for any contributing employer during this 12-month period, then I should have employer contributions credited to my account and I am therefore not eligible under the Annuity Plan rules to take a distribution from my individual Annuity Fund account."

---

[5] Citations to "Ex. B" refer to Exhibit B of the Affidavit of James M. Steinberg, Esq. in Support of the Motion for a Default Judgment, ECF No. 15-2.

3

(Id. ¶ 16; Ex. D[6]). In addition, he also swore in his affidavit that he had redeemed all of his fringe benefit stamps issued to him by contributing employers and that he was not currently in possession of any fringe benefit stamps. (Id. ¶ 17; Ex. D).

On November 8, 2018, the Trustees approved Mascarella's application, based upon his sworn affidavit, and coordinated the withdrawal of $78,720.77 from his account. (Id. ¶ 18; Chase Aff.[7] ¶ 7; Exs. C[8], D). Thereafter, on or about March 11, 2019, Mascarella redeemed fringe benefit stamps which demonstrated that he had performed work between October 30, 2017 and October 31, 2018, in contradiction to his sworn statement. (Compl. ¶ 19; Chase Aff. ¶ 8; Ex. E[9]). Based on these fringe benefit stamps, plaintiffs contend that Mascarella was not entitled to receive a distribution from the Fund and he violated the rules of the plan documents. (Compl. ¶¶ 19, 20).

Plaintiffs' Complaint contains two causes of action. The First Cause of Action alleges that Mascarella was not eligible for distribution of 100% of his annuity account because he was employed during the period from August 3, 2018 and October 26, 2018, which includes dates within the 12-month application look back period, and he redeemed fringe benefit stamps which evidenced the fact that he was employed during this period. (Id. ¶ 23). Since the plan authorizes the Trustees to recover any benefit paid in reliance on false information, the Trustees seek

---

[6] Citations to "Ex. D" refer to Exhibit D of the Affidavit of James M. Steinberg, Esq. in Support of the Motion for a Default Judgment, ECF No. 15-4.
[7] Citations to "Chase Aff." refer to the Affidavit of Catherine Chase in Support of the Motion for a Default Judgment, dated August 19, 2019, ECF No. 14.
[8] Citations to "Ex. C" refer to Exhibit C of the Affidavit of James M. Steinberg, Esq. in Support of the Motion for a Default Judgment, ECF No. 15-3.
[9] Citations to "Ex. E" refer to Exhibit E of the Affidavit of James M. Steinberg, Esq. in Support of the Motion for a Default Judgment, ECF No. 15-5.

reimbursement from defendant of the amount paid out. (Id. ¶¶ 24-27). The Second Cause of Action seeks an award of attorneys' fees and costs related to this collection action, pursuant to Section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1). (Id. ¶ 29).

DISCUSSION

A. Default Judgment

Plaintiffs move for default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. Prior to the district court's grant of default judgment, the Clerk of the Court entered a default because defendant "failed to plead or otherwise defend [against the instant Complaint]." Fed. R. Civ. P. 55(a). A clerk's entry of default is not the same as a default judgment granted by the court. Rather, Rule 55 sets forth a two-step process in which first a default, and then a default judgment, is entered. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993). After a default has been entered against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), a default judgment may be entered. See Fed. R. Civ. P. 55(b). In this case, the Clerk of the Court entered a default against defendant on September 21, 2019, and the motion for default judgment was filed on August 22, 2019.

The Second Circuit has warned that default judgment is an extreme remedy that should be used only when the need to move a case forward expeditiously trumps a party's right to be heard before a court of law. See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). When evaluating whether to grant a default judgment, the Court must weigh the costs of prolonged litigation against offering "litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96; see also Meehan v. Snow, 652 F.2d at 277. It is well-settled that defaults are

"generally disfavored" and "doubts should be resolved in favor of the defaulting party." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96. As such, courts should take great care in entering default judgment, ensuring if at all possible that both parties may have their cases judged on the merits. Id.

A court possesses significant discretion and may consider a number of factors in deciding whether or not to grant a default judgment, including "whether the grounds for default are clearly established," "the amount of money potentially involved," and the record of attempts to involve the defaulting party in the proceedings. See Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992) (citations omitted). Additionally, a court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and how harsh an effect a default judgment might have on the defendant. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, §§ 2685, 2688 (3d ed. 1998).

B. Entry of Default Judgment

The benefit plans operated by plaintiffs fall under the purview of ERISA in that the Funds are run by an organization of employees with the goal of providing health and retirement benefits to members of the employee organization, in accordance with 29 U.S.C. § 1002. Section 502(a)(3) of ERISA authorizes a fiduciary to bring a civil action "(A) to enjoin any act or practice which violates any provisions of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to enforce the terms of the plan. . . ." 29 U.S.C. § 1132(a)(3). As Trustees, Thomas A. Callahan, James T. Callahan, Michael Salgo, and Denise M. Richardson are

fiduciaries within the meaning of ERISA and are therefore authorized to bring this action to recover benefits paid in violation of the plan's terms.

Plaintiffs allege that defendant Mascarella failed to fulfill his obligation as a participant in the Fund when he misrepresented the facts and circumstances in connection with his affidavit for distribution of his individual annuity account. (Pls.' Mem.[10] at 3). In support of their claim that Mascarella misrepresented certain facts in his affidavit, plaintiffs point to the fact that he claimed that he had not worked during the 12-month period prior to applying to have his vested account distributed to him. (Id. at 3-4; Ex. D). Specifically, in the Distribution Election Form, Mascarella checked the box "A. Inactive – No contributions to your account for 12 months or more." (Ex. D). There is also a bolded section on the Election Form that clearly states "PLEASE DO NOT FORGET TO SUBMIT YOUR STAMPS." (Id.) The Application to Withdraw Annuity Funds based on Twelve Months without a Contribution and Twelve Months without working for a Contributing Employer Form, which was signed by Mascarella on October 31, 2018, was notarized and contains the following language: "I have read the attached affidavit and affirm that all statements are true." (Id.)

According to the Affidavit of the Administrator of the Local 15 Annuity Fund, Catherine Chase, several months after receiving the distribution of his annuity account balance, Mascarella redeemed fringe benefit stamps showing that he worked between October 30, 2017 and October 31, 2018, contrary to his sworn statement. (Chase Aff. ¶ 8; Ex. E). The redemption of the fringe benefit stamps also contradicted his sworn statement in which he claimed he was not in

---

[10] Citations to "Pls.' Mem." refer to plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for a Default Judgment Against Defendant Vincent Mascarella, dated August 19, 2019, ECF No. 16.

possession of any such stamps. (Id.) Since Mascarella was not entitled to receive the distribution of his annuity account balance, and since he has not returned the amount to the Fund, plaintiffs seek a default judgment in the amounts wrongly obtained by Mascarella as a result of his false statements in connection with his sworn affidavit.

Based on a review of the allegations in the Complaint, which are undisputed at this time, and the supporting documentation submitted in connection with this inquest, including the terms of the Plan, plaintiffs have sufficiently alleged a claim that the defendant breached his obligations under the Plan.

Moreover, in this case, it is beyond dispute that defendant is in default since defendant failed to file an answer to the Complaint, failed to oppose plaintiffs' motion for a default judgment, and failed to challenge the Clerk of Court's entry of a default. See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (holding that the defendant's default was "crystal clear" as evidenced by its failure to oppose plaintiff's motion for a default judgement). Despite the numerous opportunities afforded defendant, he apparently lacks interest in participating in these proceedings.

Given that plaintiffs have duly served all orders and motions on defendant, and defendant has refused to attend any hearing or move in any way whatsoever with respect to the instant case, this Court respectfully recommends that default judgment be granted against defendant. Numerous opportunities have been afforded defendant, and as he apparently lacks interest in participating in these proceedings, the Court finds no compelling reason to delay further in entering a default judgment.

C.  Damage Awards in Default Judgments

Once a default judgment is entered, the defendant is deemed to have admitted all of the well-pleaded allegations in the petition pertaining to liability. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993); Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (internal citations omitted). For the purposes of an inquest, a court accepts as true all factual allegations in the petition, except those relating to damages. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65. The plaintiffs still have the burden of proving damages, either by an evidentiary hearing or, should the defendant fail to appear, exhibits submitted by the plaintiffs. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158; see also Levesque v. Kelly Commc'ns, Inc., No. 91 CV 7045, 1993 WL 22113, at *4 (S.D.N.Y. Jan. 25, 1993); Fustok v. ContiCommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988). Defendant has neither submitted papers on the question of damages nor asked for any extensions.

A.  Improperly Distributed Plan Assets

Plaintiffs seek the return of the improperly distributed plan assets paid to defendant on the basis of his false representations. According to the Chase Affidavit, there was $78,720.77 in Mascarella's individual annuity account that was distributed to him based on his affidavit. (Chase Aff. ¶ 7; Ex. C).

Accordingly, having reviewed the various exhibits attached to the motion for default judgment, the Court respectfully recommends that Mascarella be ordered to reimburse plaintiffs in the amount of $78,720.77.

B. Attorney's Fees and Costs

Pursuant to 29 U.S.C. § 1132(g)(1), plaintiffs also seek to collect attorney's fees and costs. (Steinberg Aff. ¶ 9(b), 9(c), 11). With respect to attorney's fees, ERISA provides that when an employee benefit fund prevails in a legal action, the defendant is liable for legal costs. 29 U.S.C. § 1132(g)(2)(D). Plaintiffs request an award of $2,850.00 in legal fees and $550.00 in costs. (Steinberg Aff. ¶ 9(b), 9(c)).

"The district court retains discretion to determine . . . what constitutes a reasonable fee." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) (quoting LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 758 (2d Cir. 1998)). "The traditional starting point for determining a reasonable attorneys' fee award is the 'lodestar' amount, which results in a presumptively reasonable fee." Dunn v. Advanced Credit Recovery, Inc., No. 11 CV 4023, 2012 WL 676350, at *5 (S.D.N.Y. Mar. 1, 2012) (citing Perdue v. Kenny A., 559 U.S. 542, 551-52 (2010)), report & recommendation adopted by 2012 WL 1114335 (S.D.N.Y. Apr. 3, 2012); see also Millea v. Metro-North R.R. Co., 658 F.3d at 166-67 (explaining that it is legal error to fail to calculate the lodestar "as a starting point"); Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 188-90 (2d Cir. 2008).

To determine the lodestar amount, a court must determine "the number of hours reasonably expended on the litigation" and multiply that number "by a reasonable hourly rate." Moore v. Diversified Collection Servs., Inc., No. 07 CV 397, 2013 WL 1622949, at *1 (E.D.N.Y. Mar. 19, 2013) (internal citations and quotation marks omitted), report & recommendation adopted by 2013 WL 1622713 (E.D.N.Y. Apr. 15, 2013); see also Adusumelli

v. Steiner, Nos. 08 CV 6932, 09 CV 4902, 10 CV 4549, 2013 WL 1285260, at *2 (S.D.N.Y. Mar. 28, 2013) (explaining that "[c]ourts in the Second Circuit use the familiar 'lodestar' method of calculating reasonable attorney's fees – multiplying the number of hours reasonably expended by a reasonable hourly rate") (citing Millea v. Metro-North R.R., Co., 658 F.3d at 166); Dunn v. Advanced Credit Recovery, Inc., 2012 WL 676350, at *5.

Although the lodestar approach results in a "presumptively reasonable" fee, "it is not 'conclusive in all circumstances.'" Millea v. Metro-North R.R. Co., 658 F.3d at 166-67 (quoting Perdue v. Kenny A., 559 U.S. at 553). Rather, in "rare circumstances," a court may adjust the lodestar "when [the lodestar method] 'does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'" Id. at 167 (quoting Perdue v. Kenny A., 559 U.S. at 554); see also Adusumelli v. Steiner, 2013 WL 1285260, at *2. In other words, "a court may not adjust the lodestar based on factors already included in the lodestar calculation itself because doing so effectively double-counts those factors." Millea v. Metro-North R.R. Co., 658 F.3d at 167. As the court explained in Dunn v. Advanced Credit Recovery, Inc., a court should "first use[] the lodestar method to determine the amount of attorneys' fees and then, if necessary, adjust[] the resulting figure using the [Johnson v. Georgia Highway Express, Inc.] factors to reflect consideration of any special circumstances."[11] 2012 WL 676350, at *5, n.8.

---

[11] The Johnson factors are as follows:
> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the

The burden is on the party moving for attorney's fees to justify the hourly rates sought. See Hensley v. Eckerhart, 461 U.S. at 437. In addition to the parties' evidentiary submissions, the Court may consider its own experience and familiarity with the case and with rates generally charged. See Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers,, 34 F.3d 1148, 1160 (2d Cir. 1994) (noting that "'[a] district court's choice of rates [is] well within [its] discretion'") (alteration in original) (quoting Cabrera v. Jakobovitz, 24 F.3d 372, 393 (2d Cir. 1994), cert. denied, 513 U.S. 876 (1994) (internal quotation marks omitted)). To "inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Blum v. Stenson, 465 U.S. 866, 896 n.11 (1984).

The Second Circuit has held that in calculating the presumptively reasonable fee, "courts 'should generally use the hourly rates employed in the district in which the reviewing court sits . . . .'" Simmons v. New York City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009) (citations and internal quotation marks omitted) (holding that when awarding attorney's fees, there is a presumption in favor of relying on the rates where the case is litigated, not where the attorneys are located). Indeed, as the court in Simmons noted, in determining the "presumptively reasonable fee," courts should consider what a reasonable client would be willing to pay, keeping in mind that "a reasonable, paying client . . . wishes to spend the minimum necessary to litigate

---

        professional relationship with the client; and (12) awards in similar
        cases.
Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).

the case effectively." Id. (citations and internal quotation marks omitted); see also Cook v. First Revenue Assurance, LLC, No. 10 CV 5721, 2012 WL 272894, at *3 (E.D.N.Y. Jan. 9, 2012), report and recommendation adopted, 2012 WL 272891 (E.D.N.Y. Jan. 30, 2012). In awarding attorney's fees in the present case, the Court is guided principally by the fact that default actions are relatively simple legal matters, taking into account as well the attorney's degree of skill, and the Court's own experience dealing with similar claims.

Plaintiffs' counsel, James M. Stenberg, Esq., indicates that he has been practicing in this field of law since 1995 (Steinberg Aff. ¶ 11), and he has submitted an invoice detailing the hours spent on this matter, as required by New York State Association for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983). (Steinberg Aff. ¶ 12; Ex. G[12]). Plaintiffs seek fees for a total of 7.5 hours expended by Mr. Steinberg in drafting the Complaint and in preparing the papers in connection with the default judgment motion. (Id.) According to his Affidavit, Mr. Steinberg charges at an hourly rate of $380. (Steinberg Aff. ¶ 11).

Based on the Court's knowledge of the rates generally charged in this district for this type of work in connection with an ERISA default, the Court finds that the rates charged here are reasonable in light of the rates normally charged in the Eastern District of New York. See, e.g., Trustees of Local 522 Pension Fund v. Consolidated Cos., No. 17 CV 1991, 2018 WL 2078117, at *9-10 (E.D.N.Y. Feb. 6, 2018) (approving rates of $350 for partners and $300 for experienced associates), R&R adopted, 2018 WL 1521775 (E.D.N.Y. Mar. 27, 2018); Division 1181 Amalgamated Transit Union—New York Employees Pension Fund v. D & A Bus Co., 270 F.

---

[12] Citations to "Ex. G" refer to Exhibit G of the Affidavit of James M. Steinberg, Esq. in Support of the Motion for a Default Judgment, ECF No. 15-7.

Supp. 3d 593, 623 (E.D.N.Y. 2017) (approving rates of $350 and $300 for partners and $200 for an associate in ERISA default action); Trustees of Local 522 Pension Fund v. Bayway Lumber and Home Center, No. 16 CV 5286, 2017 WL 9511077, at *6 (E.D.N.Y. July 25, 2017) (recommending rates of $325 and $300, respectively, for partners in ERISA default), R&R adopted, 2017 WL 4075182 (E.D.N.Y. Sept. 14, 2017); Bakery & Confectionary Union & Indus. Pension Fund v. Mt. Rose Ravioli & Macaroni Co., Inc., No. 09 CV 3068, 2011 WL 6130975, at *5 (E.D.N.Y. Nov. 10, 2011) (finding a partner's hourly rate of $330 to be reasonable for ERISA litigation); LaBarbera v. Ovan Constr., Inc., No. 06 CV 2867, 2011 WL 5822629 at *5 (E.D.N.Y. Sept. 20, 2011) (approving rates of $390 per hour for work by partner and $280 per hour for work by associate in ERISA litigation, including summary judgment motion), R&R adopted, 2011 WL 5825785 (E.D.N.Y. Nov. 16, 2011); Finkel v. Fred Todino & Sons, Inc., No. 08 CV 4598, 2010 WL 4646493, at *6 (E.D.N.Y. Oct. 8, 2010) (approving rate of $370 per hour for partner and $275 per hour for associate in ERISA withdrawal liability case, but noting that these rates were on the "higher end" for the Eastern District); Gesualdi v. MBM Indus., Inc., No. 10 CV 2607, 2010 WL 372348, at *2 (E.D.N.Y. Sept. 15, 2010) (finding a partner's rate of $390 per hour and associate's rate of $280 per hour reasonable in ERISA litigation).

Moreover, the Court finds the number of hours billed in this matter to be reasonable. See, e.g., LaBarbera v. Empire State Trucking, Inc., No. 07 CV 669, 2008 WL 746490, at *4-5 (E.D.N.Y. Feb. 26, 2007). In reviewing a fee application, the court should "exclude excessive, redundant or otherwise unnecessary hours." Bliven v. Hunt, 579 F.3d 204, 213 (2d Cir. 2009) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433-35, 440 (1983)).

Based on the billing records submitted to the Court, Mr. Steinberg's request for a total of 7.5 hours since March 2019 is reasonable given the amount of work performed and the fact that the case involves a relatively straightforward ERISA claim.

Accordingly, based on the hourly rates set forth above, and the number of hours billed on this matter, the Court respectfully recommends that plaintiffs be awarded $2,850.00 in attorney's fees.

Plaintiffs are also entitled to reimbursement for costs incurred in accordance with Section 502(g)(1) of ERISA. See ERISA § 502(g), 29 U.S.C. § 1132(g); Trustees of Empire State Carpenters Annuity v. J&B Paint & Contr., LLC, No. 13 CV 35, 2013 U.S. Dist. LEXIS 126837, at *7 (E.D.N.Y. June 12, 2013). Included in these costs are filing fees and the process server's fee of $150.00. See Finkel v. Triple A Group, Inc., 708 F. Supp. 2d 277, 290 (E.D.N.Y. Sept. 2, 2009) (awarding $818.53 in costs for filing fees, service, postage, and photocopying).

Here, plaintiffs seek a total award of costs of $550.00, including the cost of the filing fee and the cost of service of the Summons and Complaint. The Court respectfully recommends that plaintiffs be awarded $550.00 in costs.

## CONCLUSION

The Court respectfully recommends that: 1) plaintiffs be awarded $78,720.77 in improperly distributed plan assets; 2) $2,850.00 in attorneys' fees; and 3) $550.00 in costs.

Thus, the Court recommends that plaintiffs be awarded **$82,120.77 in total**.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a), (e) (providing the method for computing time). Failure to file objections

within the specified time waives the right to appeal the District Court's order. See, e.g., Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
January 21, 2020

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York